FILED
2024 Jan-25 AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

NSIDE INC.,

Plaintiff,

vs.

COMMUNICATION TECHNOLOGIES, INC.,

Defendant.

Case No. 3:23-cv-01364-HNJ

**MEMORANDUM OPINION**

On June 20, 2023, Plaintiff nSide, Inc., filed a Complaint in the Circuit Court of Lauderdale County, Alabama, requesting a declaratory judgment that it does not owe Defendant Communication Technologies, Inc. ("CTI"), any additional money for work CTI performed under a verbal subcontract agreement. (Doc. 1-1, at 3-4). On October 11, 2023, CTI removed the case to this court, asserting diversity jurisdiction exists because the parties hail from different states, and the amount in controversy exceeds $75,000. (Doc. 1); *see* 28 U.S.C. § 1332(a)(1). On October 18, 2023, CTI moved alternatively for dismissal or abstention, as allegedly parallel litigation proceeds in the County Court of Hinds County, Mississippi. (Doc. 3). On November 9, 2023, nSide moved to remand the case to the Lauderdale County Circuit Court, asserting CTI did not timely effect the removal, and the amount in controversy does not exceed the jurisdictional minimum. (Doc. 11).

"'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alteration in original). As this court must assure it possesses jurisdiction over nSide's claims prior to adjudicating them, the court will address nSide's motion to remand before addressing CTI's motion to dismiss. *See Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1285 (11th Cir. 2017) (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012)) ("'Prior to making an adjudication on the merits, we must assure ourselves that we have jurisdiction to hear the case before us.'").

In so doing, the court must construe the removal statutes strictly, and it must resolve "all doubts about jurisdiction . . . in favor of remand to state court." *Mack,* 994 F.3d at 1359 (citations omitted). The party asserting federal jurisdiction (here, CTI) bears the burden of establishing jurisdiction. *See Word v. U.S. Commodity Futures Trading Comm'n*, 924 F.3d 1363, 1366-67 (11th Cir. 2019) (quoting *Kokkonen*, 511 U.S. at 377) ("'It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'"); *Bowling v. U.S. Bank Nat'l Ass'n, As Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2007-SP2*, 963 F.3d 1030, 1034 (11th Cir. 2020) (citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009)) ("On a motion to remand, the removing party shoulders the burden of establishing federal subject-matter jurisdiction.").

nSide argues the amount in controversy in this case does not exceed $75,000, as the diversity jurisdiction statute requires. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different states.").[1] Pursuant to applicable precedent, the court must assess the value of the litigation from nSide's perspective. *See Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)) (in turn quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000))) ("'When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'"). Stated differently, the court must evaluate "the monetary value of the benefit that would flow to [nSide] if the [declaratory relief] were granted." *Cohen*, 204 F.3d at 1077.

nSide's Complaint does not explicitly assign a dollar value to the declaratory relief

---

[1] The parties do not dispute the presence of diverse citizenship. According to the Complaint, nSide "is an Alabama entity," and CTI "is a Mississippi entity." (Doc. 1-1, at 3, ¶¶ 1-2). More specifically, in the Notice of Removal, CTI states:

> The Plaintiff, at the time the action was commended [*sic*: "commenced"] in the state court, was and still is a corporation incorporated under the laws of the State of Alabama, with its principal place of business in Florence, Alabama. The Defendant CTI, at the time the action was commenced in the state court, was and still is a foreign corporation incorporated under the laws of Mississippi, with its principal place of business in Pearl, Mississippi.

(Doc. 1, at 2, ¶ 3).

it requests. nSide alleges it has paid approximately $38,000 to CTI for installing door strike plates pursuant to a verbal subcontract agreement. (Doc. 1-1, ¶ 8). nSide does not believe it owes CTI any additional money under the agreement, yet CTI has demanded additional payment. (*Id.* ¶ 9). Specifically, CTI contends nSide agreed to pay "$550 per door installed and also to pay per diems for [CTI's] employees." (*Id.* ¶ 10). nSide denies not only that it owes CTI any additional payments but also that CTI "even fulfilled the work they claim to have performed since a second subcontractor and in-house installations crews were required to complete the work which [CTI] failed to perform." (*Id.* ¶ 11).

nSide requests a declaratory judgment that:

> 14. There exists a justiciable controversy between the parties as to whether or not a contract exists and whether or not the Defendant was paid in full.
>
> 15. The Plaintiff did not agree to pay $550 per door and a per diem.
>
> 16. The Plaintiff paid the Defendant in full for the work performed.
>
> 17. The Defendant is not entitled to further compensation.
>
> 18. That, in the event this matter is not addressed the Plaintiff will suffer concrete harm and that the Plaintiff is in need of an order settling this matter.

(*Id.* ¶¶ 14-18).

To support satisfaction of the jurisdictional minimum, CTI presented the

affidavit of Joe Payne, its President. Payne attached to his affidavit, and swore to the veracity of, a Complaint CTI filed against nSide in the County Court of Rankin County, Mississippi, on March 24, 2023. (Doc. 16-3, at 1, ¶ 3).[2] In that Complaint, CTI asserts nSide agreed to pay it $93,500 ($550 per door for 170 doors), plus a per diem allotment that apparently equaled $10,785, for a total contract amount of $104,285. (*Id.* at 7, ¶ 10).[3] CTI claims nSide still owes it $65,285 of that total (*Id.* at 7, ¶ 13), and it asserts a claim for breach of contract against nSide for failing to pay that amount. (*Id.* at 8, ¶¶ 15-18). CTI also asserts a declaratory relief claim as to the rights of the parties under the contract. (*Id.* at 9, ¶ 20). CTI's Mississippi Complaint demands compensatory damages in the amount of $65,285, along with "other related damages" and "other material and consequential damages, "in addition to all damages to compensate [CTI] for financial injury and losses, including pre-judgment and post-judgment interest on such amounts at the legal rate until paid; attorney fees, and; [*sic*] costs of court." (*Id.* at 4 ¶ 14, 9).

---

[2] The existence of this Mississippi case forms the basis of CTI's motion to dismiss or abstain. (Doc. 3).

[3] Payne's affidavit does not delineate the per diem allotment, but he states "the entire value of the contract and amounts billed nSide, Inc." equaled $104,285. (Doc. 16-3, at 2, ¶ 7). The total payment for 170 doors at $550 per door equals $93,500. The difference between $104,285 and $93,500 equates to $10,785, and the parties have not identified any other amounts contributing to the contract total. A Customer Balance Detail printout from CTI indicates that CTI invoiced a total of $104,285 to nSide, though it also does not delineate the amount of per diem payments included within that total. The printout also indicates nSide paid a total of $39,000 to CTI. (*Id.* at 11).

Based on the factual allegations of the Mississippi Complaint, CTI asserts the value of this litigation encompasses "the entire value of the contract and amounts billed nSide, Inc., - [$]104,285," which "not only includes amounts that CTI contends nSide, Inc. owes CTI on the contract, but also the amounts paid by nSide, Inc., to CTI for work it now contends was deficient, defective, or had to be redone." (Doc. 16, at 4, ¶ 2(a)). In addition, CTI asserts the value of the litigation includes pre-judgment and post-judgment interest, attorney fees, and any other damages nSide may pursue. (*Id.* at 4, ¶ 2(b)).

However, those assertions represent the value of the litigation from CTI's perspective, not necessarily the value from nSide's perspective, which constitutes the pertinent inquiry. nSide already paid CTI $39,000 under the contract, and it does not seek recovery for any of those payments. Therefore, from nSide's perspective, $39,000 of the total $104,285 contract amount does not remain in controversy. Rather, if nSide obtains a declaratory judgment in this action that it owes CTI no further payments under the contract, it will save $65,285, the amount CTI claims nSide continues to owe. As that amount falls below the jurisdictional threshold, the court must assess whether more than an additional $9,715 (the required additional amount to equal the $75,000 jurisdictional threshold) will accrue to nSide's benefit if it receives the requested declaratory judgment.

As any amounts beyond the $65,285 in allegedly outstanding payments remain

undefined,[4] CTI must establish such amounts by a preponderance of the evidence. *See Fastcase*, 907 F.3d at 1342 (alteration in original) (citations omitted) (Though a court generally will second-guess a plaintiff's good-faith pleading of the amount in controversy requirement only if it "'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount,'" the burden of demonstrating the jurisdictional minimum changes to a preponderance of the evidence "when the plaintiff pleads an unspecified amount of damages.");[5] *see also Byle v. Maggie Adams I*, No. 1:21-CV-696-RAH-KFP, 2022 WL 2196424, at *3 (M.D. Ala. Apr. 15, 2022) (When a complaint clearly pled $64,000 in damages but did not directly place a monetary value on a separate claim for declaratory relief, the plaintiff, who bore the burden of demonstrating federal jurisdiction, needed to prove the value of the declaratory relief exceeded $11,000 to approach the jurisdictional threshold.).

As an initial matter, the diversity statute explicitly excludes interest from computation of the jurisdictional minimum. 28 U.S.C. § 1332(a) (emphasis added) ("The district courts shall have original jurisdiction of all civil actions where the matter

---

[4] Damages stand indeterminate where a plaintiff makes "no effort to quantify" the damages he seeks. *Doe v. Predator Catchers, Inc.*, No. 3:22-CV-414-MMH-LLL, 2023 WL 4107084, at *2 (M.D. Fla. June 21, 2023) (citations omitted). nSide's Complaint does not refer to any dollar amounts other than the $550 charge per door. Therefore, any other amounts remain undefined.

[5] "It is not the type of relief that triggers the preponderance requirement, but instead the specificity with which the plaintiff pleads the amount in controversy." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 n.5 (11th Cir. 2018).

in controversy exceeds the sum or value of $75,000, *exclusive of interest and costs . . . .*") (emphasis added); *see also Kemper v. Ray's Sunshine Cycles, Inc.*, No. 612CV191ORL22DAB, 2012 WL 13136806, at *1 (M.D. Fla. Mar. 20, 2012) ("Although Kemper seeks interest and costs, the plain text of 28 U.S.C. § 1332(a) excludes those items from the amount in controversy calculus."); *Pinckard Vault & Marble Works v. King Lifts, Inc.*, 53 F. Supp. 2d 1263, 1265 (M.D. Ala. 1999) ("Defendant incorrectly contends that prejudgment interest may be added to the amount of damages to reach the requisite amount in controversy.").

Moreover, "[t]he general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mut. Ins. Co.*, 329 F.3d at 808 n.4 (citing *Graham v. Henegar,* 640 F.2d 732, 736 (5th Cir. 1981));[6] *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) ("There is . . . 'direct legal authority' supporting inclusion of a claim for attorney's fees in determining the amount in controversy, when an award of fees is authorized either by statute or contract."). The parties did not enter into a written contract, and neither party has asserted their oral agreement provided for fee-shifting. The Federal Declaratory Judgment Act[7] also does not provide for fee-shifting, except in cases of bad faith or

---

[6] In *Bonner v. City of Pritchard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] A district court applies the federal Declaratory Judgment Act rather than state declaratory judgment

other misconduct, which no party has alleged here. *See* 28 U.S.C. §§ 2201-2202; *see also Alabama Disabilities Advoc. Program v. SafetyNet Youthcare, Inc.*, No. CVI.A. 13-0519-CG-B, 2015 WL 566946, at *4 (S.D. Ala. Feb. 11, 2015) (citation omitted) ("On its face, the DJA does not mention fee shifting. . . . However, an award of attorneys' fees under 28 U.S.C. § 2202 is permitted pursuant to a court's equitable powers in 'cases of bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action.'"). Therefore, the court will not include attorney's fees in the amount in controversy.

CTI has not demonstrated by a preponderance of the evidence that nSide stands to benefit in excess of $9,715 in recovery for work CTI allegedly deficiently performed, or for any other type of damages in this suit. nSide did not ask the court to compensate

---

acts when proceeding in a diversity action seeking declaratory relief. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) (citing *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) (noting that the DJA "does not enlarge the jurisdiction of the federal courts but rather is operative only in respect to controversies which are such in the constitutional sense. . . . Thus the operation of the [DJA] is procedural only." (first alteration in original) (internal quotation marks omitted))); *see also Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) (per curiam) ("Because the Florida Declaratory Judgment Act is procedural as opposed to substantive, the district court did not err in construing the Coccaros' cause of action as a claim for declaratory and injunctive relief brought under 28 U.S.C. § 2201 exclusively."); *MacMillan-Bloedel, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 558 F. Supp. 596, 598 (S.D. Ala. 1983) ("In a declaratory judgment action where jurisdiction is based solely on diversity the question of whether a justiciable controversy exists within the purview of the Declaratory Judgment Act, 28 U.S.C.A. § 2201 (West 1982), is to be determined by federal law. The court, however, will apply the law of the forum state in resolving the substantive, non-federal issues."); *Snow v. King*, No. 4:17-CV-1048-VEH, 2018 WL 656032, at *9 n.13 (N.D. Ala. Feb. 1, 2018) ("Although the federal Declaratory Judgment Act is the proper procedural vehicle when seeking declaratory relief in federal court, the same rules apply under the Alabama statutes." (emphasis in original) (citations omitted)).

it for any defective work, or for any additional damages. Though nSide's Complaint "denies that [CTI] even fulfilled the work they claim to have performed since a second subcontractor and in-house installations crews were required to complete the work which [CTI] failed to perform," (Doc. 1-1, ¶ 11), nSide does not seek recovery of any amounts it already paid to CTI. Rather, as stated, nSide restricts its requests to a judicial declaration that: (1) a justiciable controversy exists; (2) nSide did not agree to pay CTI $550 per door and a per diem; (3) nSide paid CTI in full for all work CTI performed; and (4) CTI should not receive any further compensation. (*Id.* at 4, ¶¶ 14-17). Absent a demand in nSide's Complaint to recover for CTI's allegedly defective work, or any other damages, any such potential recovery remains "'too speculative and immeasurable' to establish the requisite amount in controversy." *Cohen*, 204 F.3d at 1077 (quoting *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir. 1997)).

Even if the court could fairly construe nSide's declaratory judgment Complaint as requesting a declaration that nSide shall recoup payments for allegedly defective work, or a request for any other damages, there exists no evidence regarding the monetary value of any such damages. CTI cannot demonstrate by a preponderance of the evidence that such payments would exceed $9,715.

Finally, CTI has not sustained its burden to depict any "material or consequential damages" (Doc. 16-3 at 9) the court may assess vis-a-vis the amount in controversy

from nSide's perspective. The most pertinent form of "material and consequential damages" for the circumstances at bar comprise lost profits. Nevertheless, the court has already accounted for lost profits vis-à-vis the general damages at issue, and as noted, nSide has not discharged its burden by a preponderance of the evidence vis-à-vis the amount of any lost profits as a matter of consequential damages.[8]

In summary, CTI does not demonstrate by a preponderance of the evidence that the value of nSide's request for declaratory relief exceeds $75,000; at best, the preponderance of the evidence depicts $65,285 as the amount in controversy vis-à-vis the requested declaratory relief. As that amount does not satisfy the minimal amount

[8] The Eleventh Circuit recently discussed the distinction between lost profits as a matter of general damages versus consequential damages:

> The Alabama Supreme Court's decision in *Mannington Wood Floors, Inc. v. Port Epres Transport, Inc.*, 669 So. 2d 817 (Ala. 1995), is instructive. There, the court distinguished between general damages and consequential damages, both of which could refer to lost profits. 669 So. 2d at 822-23. For general damages, the court noted that "damages awarded for breach of contract should return the injured party to the position he would have been had the contract fully been performed." *Id.* at 822. There, the plaintiff claimed that the defendant breached a shipping contract because it diverted its product to another location, thus depriving the plaintiff of the profits it would have made had the plaintiff shipped that product. *Id.* at 820. . . . The court found that the plaintiff's lost profits were for general damages, not consequential ones, because it "was merely seeking to recover the amount it should have received for shipping wood by-products under the terms of the contract." *Id.* at 823. . . .
>
> As the court in *Mannington* noted, a plaintiff can recover for general damages if "he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss." *Id.* at 822. The heightened "reasonable certainty" standard applies to consequential damages, not general damages. *Id.* at 823.

*WM Mobile Bay Env't Ctr., Inc. v. City of Mobile*, No. 20-14749, 2022 WL 2784606, at *4-5 (11th Cir. July 15, 2022).

in controversy for diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and no independent statutory basis exists for the exercise of federal jurisdiction, this court does not possess subject matter jurisdiction over nSide's Complaint for declaratory relief. Moreover, as CTI has not established by a preponderance of the evidence the existence of diversity jurisdiction, the court need not address nSide's alternative arguments that CTI untimely and incompletely effected the removal. The court will **GRANT** nSide's motion to remand, and it will remand the case to the Circuit Court of Lauderdale County, Alabama.

As this court does not possess subject matter jurisdiction over nSide's Complaint, the court cannot rule on CTI's motion to dismiss or abstain. Therefore, the court will **DENY** that motion without prejudice to CTI's right to raise the same arguments in state court.

The court will contemporaneously enter an appropriate order.

**DONE** and **ORDERED** this 25th day of January, 2024.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE